CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY V.
P. R. COX.

FILED MAY 5, 1897.   No. 7255.

1. **Railroad Companies:** FAILURE TO FENCE TRACK: INJURY TO STOCK.
Under sections 1 and 2, article 1, chapter 72, Compiled Statutes, a
railroad company is liable for injuries caused by a moving train
to cattle, horses, sheep, or hogs upon its track at a place where it
ought to have been, but was not, fenced, although there was no
actual collision between the train and the animals injured. *Fre-
mont, E. & M. V. R. Co. v. Pounder*, 36 Neb., 247, followed.

2. ———: ———: ———. *Burlington & M. R. R. Co. v. Shoemaker*, 18
Neb., 369, overruled.

ERROR from the district court of Butler county.   Tried
below before WHEELER, J.   *Affirmed.*

*George P. Sheesley, F. E. Bishop,* and *J. W. Deweese,* for
plaintiff in error.

*A. R. Thomson, contra.*

NORVAL, J.

This was an action to recover the value of a horse al-
leged to have been fatally injured by one of defendant's
trains.   The evidence adduced on the trial disclosed sub-
stantially the following facts: In the daytime of March
26, 1892, plaintiff's horse went upon the defendant's road
about ninety rods south of one of its bridges, and at a
point where the law made it the duty of the company to
build and maintain a fence on each side of its right of
way.   At the time an engine and train of cars approached
from the south at a high rate of speed, and when within
forty or fifty rods from the horse, the engineer sounded
the alarm whistle of his engine, which, with the rapid
approach of the train, frightened the horse, causing him
to run north along the track and upon the open bridge,
where he fell among the timbers and was so crippled and

injured as to be valueless. The engine and train did
not come in contact or collision with the horse, but
stopped about one hundred feet before reaching the
bridge. The cause was tried by a jury, resulting in a
verdict and judgment for the plaintiff. A motion for a
new trial was overruled, and the railroad company ex-
cepted and brought the record here for review.

A number of rulings of the trial court are assigned as
error, but the only point presented for consideration is
whether there must have been an actual collision be-
tween the train and the horse in order to make the de-
fendant liable. The decision turns upon the construction
given sections 1 and 2, article 1, chapter 72, Compiled
Statutes.

Section 1, after providing that railroads shall be fenced,
declares that "so long as such fences and cattle guards
shall be made after the time hereinbefore prescribed for
making the same shall have elapsed, and when such
fences and guards, or any part thereof, is not in suf-
ficiently good repair to accomplish the objects for which
the same is herein prescribed, is intended, such railroad
corporation and its agents shall be liable for any and all
damages which shall be done by the agents, engines, or
trains of any such corporation, or by the locomotives, en-
gines, or trains of any other corporations permitted and
running over or upon their said railroad to any cattle,
horses, sheep, or hogs thereon."

The next section of the same article reads as follows:

"Sec. 2. Any railroad company hereafter running or
operating its road in this state, and failing to fence on
both sides thereof, against all live stock running at large
at all points, shall be absolutely liable to the owner of
any live stock injured, killed, or destroyed by their agents,
employes, or engineers, or by the agents, employes, or
engines belonging to any other railroad company running
over and upon such road, or there being," etc.

In *Fremont, E. & M. V. R. Co. v. Lamb*, 11 Neb., 592,
LAKE, J., of the last quoted section, said, *arguendo*, that

"by the law of this state railroad companies are required to fence their track against stock running at large, and, failing to do so, are liable to the owner of any that may be killed or injured in consequence of this omission of duty."

In *Burlington & M. R. R. Co. v. Shoemaker*, 18 Neb., 369, the foregoing statutory provisions were before the court for consideration, and it was held that the injury to stock must result from actual collision or contact with the engines or cars, or through the negligence or willful misconduct of an agent or servant of the company in the course of his employment, in order to create a liability against the corporation. The facts in that case differ from those in the case before us in one respect. There the horse, while on the right of way, was so frightened by a passing train that he ran after the cars and into a bridge on the line of the railroad and was injured, while here he was run into the bridge by the engine and cars.

*Fremont, E. & M. V. R. Co. v. Pounder*, 36 Neb., 247, was decided upon a state of facts quite similar to those in the case before us, and it was ruled that instructions requested by the corporation to the effect that it was not liable for the death or injury of stock caused by a moving train, where there is no actual or direct collision with such train, were properly refused. In the opinion in the Pounder case no reference was made to the two earlier opinions in this court already mentioned.

It is obvious that the three decisions are irreconcilable, and the question confronting us is which one of them properly construed the provisions of the sections copied above. Counsel for the railroad company contend that the statute contemplates a direct collision between the engine or train and the animal injured, and since the horse was not injured by any actual contact with any part of the train, the company is not liable and the plaintiff is without remedy. We cannot adopt this as the true construction. To do so would be to interpolate words into the statute which were not placed there by the lawmaking

35

body.   Section 1 declares that every railroad corporation failing to erect and maintain a fence on both sides of its road "shall be liable for any and all damages which shall be done by the agents, engines or trains    *    *    * to any cattle, horses, sheep, or hogs thereon." Nothing is said about collision on the road or that the stock must be injured or killed by any actual contact, to make the corporation liable.   No such idea can be properly drawn from the language quoted.   If the contention of the railroad company is well founded, then it logically follows that the latter is not liable for any injury or damage done to live stock by its agents, unless the same resulted from a direct or actual contact with such agent.   It is plain that where a horse is injured by being driven into a railroad bridge by a servant of the company in the course of his employment, the latter is liable though the animal was not even touched by the servant; and the rule is the same if the horse is chased into the bridge by an approaching train, although the animal was not injured by any actual contact with the engine or cars.   It is negligence for a railroad corporation to fail to fence its track at a place where the law imposes a duty to fence, but such omission alone would not make the company liable for damages received by stock while on its right of way. But to create a liability, in addition to the failure to construct and maintain the fence, the injury must have been occasioned by an agent of the company, or some engine or train of cars.   Should an animal which had strayed upon a right of way at a point required to be fenced inflict an injury upon itself, as by running into a bridge on the railroad, and no agent or servant of the company or locomotive or train is near or was in any manner responsible therefor, the corporation could not be made to respond in damages.   (*Knight v. New York, L. E. & W. R. Co.*, 99 N. Y., 25.)   The true meaning of our statute is that a railroad company is liable for injury to live stock caused by a train upon its unfenced tracks where the law requires it to be fenced, whether such stock was touched by the

train or not.   A similar case, which arose in Oregon under a statute substantially like ours, is *Meeker v. Northern P. R. R. Co.*, 21 Ore., 513.   The court, after reviewing the authorities upon the question, closes its opinion in this language: "In the case at bar, the mare got on the track for the want of a fence where the duty to fence existed, and, frightened at an approaching train, fled down the track to escape the danger, and in that flight ran into an open trestle and was injured.   It was the want of a fence along the track at a place where it ought to have been fenced, that permitted the mare to get on the track; and the injury which resulted to her therefrom was directly caused by a moving train.   The want of a fence, therefore, in connection with the moving train was the proximate cause of the injury, and rendered the company liable under the terms of the statute without actual collision."   (See *Atchison, T. & S. F. R. Co. v. Jones*, 20 Kan., 527.)

The courts of some of the sister states have held, under statutes not materially different from ours, that there must be an actual collision to give a right of recovery by the owner of injured stock.   But the reasons in the opinions assigned for such construction are insufficient to induce us to depart from the rule announced in *Fremont, E. & M. V. R. Co. v. Pounder*, 36 Neb., 247.   Under the evidence no other verdict could have been properly returned, and the judgment is accordingly

AFFIRMED.