## MISSOURI, O. & G. RY. CO. v. BROWN.

No. 4043.    Opinion Filed April 27, 1915.

Rehearing Denied June 1, 1915.

(148 Pac. 1040.)

RAILROADS—Failure to Fence Right of Way—Damage to Crops—Instructions. It is error to instruct a jury that, under the law, the defendant company, is required to fence its right of way to protect landowners whose land is immediately adjacent to the right of way from the trespass of cattle that otherwise might enter over the right of way in and upon the adjactnt land.

(Syllabus by Rittenhouse, C.)

*Error from County Court, Bryan County;*

*J. L. Rappolee, Judge.*

Action by Frank Brown against the Missouri, Oklahoma & Gulf Railway Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

*E. R. Jones* and *J. C. Wilhoit* and *Arthur Miller,* for plaintiff in error.

*Chas. E. McPherren, Chas. B. Cochran,* and *Chas. P. Abbott,* for defendant in error.

RITTENHOUSE, C.   This action was brought to recover damages to growing crops.   It is alleged in plaintiff's petition that he was the lessee of a certain tract of land located in section 18, township 9 south, range 9 east of the Indian meridian, under a lease from the owner, J. M. Webb, Jr., and that said land was planted to corn.   In the months of May, June, and July, 1910, the Missouri, Oklahoma & Gulf Railway Company, while engaged in building and operating its railroad through Bryan county and through the premises in his possession, wrongfully tore down and destroyed the fences which inclosed the premises so planted, and thereby permitted stock to trespass upon said premises and destroy the said crop of corn; that the destruction of said fences by the railway company, its agents and employees, was at a time when said corn was in roasting ears; and that at the time the said railway company destroyed said fences the railway company failed to fence its right of way and to construct cattle guards, and that by reason of the wrongful conduct of the railway company, its agents, servants, and employees, said crop of corn was destroyed by cattle entering on the premises of the plaintiff and eating said corn, to plaintiff's damage in the sum of $350; that the removal of said fences and the failure of the railway company to fence its right of way was without consent of the plaintiff. Plaintiff then prayed judgment against the railway company in the sum of $350.   Issues were joined and the cause submitted to a jury, resulting in a judgment against the company for $100.   Motion for a new trial was filed and passed upon, and the cause brought here for review:

The court instructed the jury that:

"You are instructed that, under the law, the defendant company is required to fence its right of way to protect landowners whose land is immediately adjacent to the said right of way from the trespass of cattle that otherwise might enter over the right of way in and upon the said adjacent land; and you are further instructed that the defendant company owes the said duty of fencing the said right of way in a reasonable time after the defendant company takes possession of the said right of way, for the pur-

pose of constructing its railway, through either its agents, servants, or contractors.

"You are further instructed that if you find by a fair preponderance of the evidence that the plaintiffs were damaged by the trespass of cattle passing over the right of way of the defendant company on to the land in question at the point alleged, and further find that the said damage was the direct result of the failure of the defendant company to fence its right of way in a reasonable time after taking possession of same, that the defendant company is held to respond in the amount of such damages, and it is your duty to find as to the amount of such damage in favor of the plaintiff."

Plaintiff in error has directed the weight of its argument against the giving of these instructions. At common law the railway company did not owe to the adjacent landowner a duty to build and maintain a fence between the right of way and the adjacent land; but by statute the railway company is required to build and maintain a good and sufficient fence along its right of way, and by section 1392, Comp. Laws 1909, it is provided that:

"Whenever any railroad corporation or the lessee, person, company or corporation operating any railroad, shall neglect to build and maintain such fence, as provided in this act, such railroad corporation, lessee, person, company or corporation operating the same, shall be liable for all animals killed by reason of the failure to construct such fence."

Now, what is the liability for a failure to construct such a fence? It is that the company shall be liable for all animals killed by reason of the failure to construct such fence. The statute is not broad enough to cover damages sustained by adjacent landowners by reason of animals belonging to a third party trespassing upon such adjacent land.

The instructions in the instant case are framed in such a manner as to make the company liable under the statute for a failure to fence the plaintiff's private tract of land against cattle owned by his neighbors, and unless fences are constructed, under the statutes, to make the company liable for damages caused by the

Form 24

neighbors' cattle trespassing upon his field. We do not think that the railway company is liable for damage to growing crops through such a cause, but the company's liability is only for animals killed by reason of the failure to construct such fence.

In *Clark's Adm'x v. Hannibal & St. J. R. Co.*, 36 Mo. 202, the rairoad company had entered into a contract with John Duff & Co. to build its road, and this company had sublet the contract to other parties. The employees of the subcontractors had torn down the fence of plaintiff to grade the right of way, and cattle destroyed plaintiff's crops. In speaking of the fence statute the court said:

"Nor do they impose on the company any absolute obligation even to fence the railroad in. Their effect is only to make the corporation liable to the owners of cattle or other animals for injuries done to them when straying upon the track, without any proof of negligence, in case they fail to erect such fences. The instructions in question seemed to be framed upon the assumption that the railroad company was bound by these statutes to fence in the farms and fields of the private landowners against the cattle and animals of other proprietors, their neighbors—at least, so far as that would be accomplished by erecting fences along the railroad—and that, unless that were done, the company would be liable for all the damages which the plaintiff's growing crops might suffer by reason of the cattle and hogs of other persons getting into his fields. But, plainly, it belongs to the landowner himself to fence his own farm, and inclose his own fields, at his own expense, against all intrusion from without. At common law it was the duty of every landowner to keep his cattle within his own inclosures, and the liability of one owner to another for damages done by the straying cattle turned much upon this principle; but this rule has been considerably modified by operation of the statutes of this state. Aside from the statute, the railroad company would not be bound to fence their road against stray cattle, nor would they be liable for killing such cattle upon their tracks without proof of negligence on their part; on the contrary, the owners of cattle might be liable for damages done to the railroad, or to trains and passengers, by reason of such cattle being negligently allowed to stray upon the railroad. The statutes so far change all this as to relieve the owners from the obligation to keep their cattle within inclosures, and to

make the railroad corporation liable for killing cattle upon the track, without proof of negligence on their part, unless they fence in the railroad where it runs through inclosed fields; but they go further. * * * But it cannot be inferred that the railroad company is bound to build fences for the inclosure of the farms and fields of private landowners, nor that it incurs any liability to such owners by reason of any failure to erect and maintain the fences required by these railroad acts, otherwise than by killing cattle on the track. * * * But the only consequence that could be visited upon the company, if they failed to erect such fences, would be that they would thereby render the corporation liable for the value of cattle and animals killed upon their track without any proof of negligence, but not at all for the destruction of the plaintiff's crops by the intrusion of the neighbor's cattle into his fields."

In *Peoria, etc., R. R. Co. v. Schiller,* 12 Ill. App. 443, it was held that, where the statute expressly provides that for failure to fence or construct cattle guards the company shall be liable for injury to animals by its engines and cars, the company will not be liable for injury to crops by trespassing animals. See, also, 1 Sutherland on Damages, sec. 20; *Mangold v. St. L. R. R. Co.,* 116 Mo. App. 606, 92 S. W. 753; *Gowan v. St. Paul, etc., R. R. Co.,* 25 Minn. 328; *Snyder v. Penna. R. R. Co.,* 205 Pa. 619, 55 Atl. 778; *Bear v. Chicago R. R. Co.,* 141 Fed. 25, 72 C. C. A. 513; *Frisch v. Chicago G. W. R. R. Co.,* 95 Minn. 398, 104 N. W. 228.

The plain object of the statute is to prevent animals from going upon the right of way, and for a failure to comply with the special requirements of the statute a special liability is provided, which gives to the adjacent landowner damages for all animals killed. Had the Legislature intended to create a liability beyond that specifically mentioned, it would have so provided. Adopting this construction of the statute, the court erred in instructing the jury that under the law the company was required to fence its right of way to protect landowners, whose land is immediately adjacent to the right of way, from the trespass of cattle that otherwise might enter over the right of way in and upon the adjacent land.

The cause should therefore be reversed and remanded.

By the Court: It is so ordered.